39754. WELCH et al. v. THE STATE.

SMITH, Justice.

This is a criminal case wherein appellants challenge the constitutionality of the public drunkenness statute, OCGA § 16-11-41 (Code Ann. § 26-2607), and also cite as error certain rulings and comments of the court below which they argue deprived them of a fair trial. We affirm.

In February 1982, appellants, who are husband and wife, were traveling aboard a railroad train through Georgia from New Orleans to New York. The record shows that from the time they came aboard at 8:30 a.m. in New Orleans the appellants and members of their party had been buying drinks in the lounge car. During the day they became increasingly loud and profane, and were belligerently uncooperative when asked by the conductor to show their tickets as

they neared Atlanta in the evening. Train personnel requested assistance from police and the appellants were arrested in Gainesville at about 9:00 p.m. Both resisted arrest and police had to forcibly subdue the pair to get them off the train. Appellants were charged with public drunkenness and obstruction of a police officer in the lawful discharge of his duties.

1. Appellants first enumerate the general grounds. We find that the evidence was sufficient to support the jury's verdict under the standards of Jackson v. Virginia, 443 U.S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellants next assert that it was error for the trial court to charge the jury by merely reading OCGA § 16-11-41 (Code Ann. § 26-2607) to them verbatim and to refuse to clarify upon the jury's request. It is well established that the court has a duty to recharge when the jury so requests. *Edwards v. State,* 233 Ga. 625 (212 SE2d 802) (1975). The record shows that in the present case the court recharged the jury by reciting the applicable statute, although without further explanation, and made clear to them the applicable law. Unlike the cases cited by appellants, the jury here did not demonstrate confusion or misconception as to the applicable law. The record shows that upon conclusion of the recharge, the judge asked the foreman and the jury whether there were further questions. The foreman answered that he had none and no one on the jury responded. Appellants failed to object to the form of the recharge or to request amplifying instruction. Thus, there was no error in not providing such instruction.

3. Appellants enumerate as error the trial court's failure to charge as requested regarding warrantless arrest. This enumeration has no merit. The court need not give the exact language of a request to charge when the same principles are otherwise fairly given to the jury. *Jackson v. State,* 249 Ga. 751 (295 SE2d 53) (1982); *Logue v. State,* 155 Ga. App. 476 (271 SE2d 42) (1980). The court properly charged the jury as to the principles of law concerning warrantless arrest.

4. Appellants challenge OCGA § 16-11-41 (Code Ann. § 26-2607), the public drunkenness statute, as vague and overbroad both on its face and as applied. In evaluating such a challenge the U. S. Supreme Court has recently said that it would consider any limiting construction proffered by a state court. Village of Hoffman Estates v. Flipside, Hoffman Estates, 455 U.S. 489 (102 SC 1186, 71 LE2d 362) (1982). We will do the same in our review of the public drunkenness law.

We have construed OCGA § 16-11-41 (Code Ann. § 26-2607) to require that the accused not only be or appear intoxicated, but that

he manifest this condition by boisterous, vulgar, loud, profane, or unbecoming language. *Scarborough v. State,* 231 Ga. 7 (200 SE2d 115) (1975). The Court of Appeals has further held that unless one of these outward manifestations or acts is present, no violation of the law has occurred. *Peoples v. State,* 134 Ga. App. 820 (216 SE2d 604) (1975).

The void-for-vagueness doctrine as interpreted by the U. S. Supreme Court "requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." Kolender v. Lawson, 51 USLW 4532, 4533 (May 2, 1983). OCGA § 16-11-41 (Code Ann. § 26-2607), as presently drafted and construed by the courts of this state, contains clear standards for determining whether the conduct of an accused is violative of its terms. See *Adams v. State,* 153 Ga. App. 41 (264 SE2d 532) (1980). It describes with sufficient particularity the acts prohibited and neither on its face nor in its application does it furnish police a tool for arbitrary encroachment upon constitutionally protected conduct. Accordingly, we find no merit in this enumeration.

5. In their fifth enumeration appellants cite as error the trial court's refusal to allow voir dire to be reopened for a certain juror who stated his occupation as "retired" during questioning of the jurors. He was then asked whether prior to his retirement he belonged to any law enforcement organizations. He answered negatively, but nonetheless was later peremptorily struck. The next day the district attorney informed defense counsel that the prospective juror had been a bailiff of the Superior Court of Hall County. There is no assertion that the district attorney had this knowledge during voir dire.

Appellants requested further voir dire of this juror and sought to establish grounds to challenge for cause. The court denied this request. Appellants assert that, where their peremptory strikes were later exhausted, they were harmed by being forced to use a peremptory strike for a juror who might have been excused for cause.

In *Bradham v. State,* 243 Ga. 638 (256 SE2d 331) (1979), cited by appellants in support of their contention, the challenged juror stated that he had three sons who were law enforcement officers in another county and he would be inclined to give more credence to a police officer's testimony than a non-police witness. The court refused to dismiss him for cause and the juror was struck peremptorily by the defendant who exhausted his peremptory strikes. We conclude that *Bradham* is inapposite for two reasons. Defense counsel in this case had ample opportunity to question the juror, discover his status, and

challenge him for cause. This was not done. The trial court thus did not refuse to excuse the juror for cause, as was the case in *Bradham.* Second, no authority is cited, and we know of none, for the proposition that a bailiff is presumptively unable to consider in an impartial and unbiased manner the facts and law of a case presented to him. Unlike the juror in *Bradham,* the prospective juror here agreed that a law enforcement officer might not always be a truthful or believable witness.

"In Georgia, control of the voir dire examination is vested in the discretion of the trial judge and will not be interfered with unless it is clearly shown that such discretion was abused." *Ruffin v. State,* 243 Ga. 95, 97 (252 SE2d 472) (1979). In the present case there was no abuse of the trial court's discretion in conducting voir dire and we find no merit in this enumeration.

6. In enumerations six and seven, appellants cite as error the trial court's denial of their motions for mistrial and new trial because of improper remarks and comments by the prosecution during opening argument and summation. This included a characterization of the appellants as "civil rights leaders," uncivilized, and people "used to civil disobedience." Appellants argue that these statements were inflammatory, improper, and highly prejudicial. The trial court appropriately instructed the jury that opening comments are not evidence and are not to be considered as such. The court also admonished and rebuked the state's attorney for these remarks.

OCGA § 17-8-75 (Code Ann. § 81-1009) commits to the judge's discretion the decision to order a mistrial where counsel has made statements of prejudicial matters not in evidence before the jury. This discretion will not be interfered with on appeal unless manifestly abused. *Ladson v. State,* 248 Ga. 470 (6, 7) (285 SE2d 508) (1981); *White v. State,* 159 Ga. App. 545 (284 SE2d 76) (1981). No such abuse occurred here and these enumerations are without merit.

7. In enumerations eight and nine appellants argue that various rulings and comments of the trial court, as well as the presence of armed law officers in the courtroom, had the cumulative effect of denying them a fair trial. The record shows that attorneys for both the appellants and the state were zealous in the representation of their clients and frequently objected to evidence offered by the other and disagreed with the court's various rulings during the trial. Nevertheless, the trial was free from irrelevant or prejudicial remarks calculated to stir up racial prejudices and animosity. The cases cited by the appellants involving racially inflammatory comments from the bench or counsel are thus inapposite here. Nor did the court intervene unnecessarily in the trial to address appellant's counsel in such a way as to intimidate him. "The trial judge has broad discretion

in handling these matters and we are loath to interfere with that discretion unless it is manifestly abused by clearly demonstrated prejudice or unfairness." *Dyke v. State,* 232 Ga. 817, 825 (209 SE2d 166) (1974). In this case we find no clearly demonstrated prejudice or unfairness and thus no reason to interfere with the rulings of the court.

As to the question of guards in the courtroom, it is well established that the trial court may in its discretion take the measures it deems reasonably necessary to insure that the courtroom is secure and conducive to the conduct of a fair and safe trial. See *Green v. State,* 246 Ga. 598 (6) (272 SE2d 475) (1982). There were public demonstrations and rallies by supporters of the appellants during the course of this trial. At least one nationally known person participated in a rally on the appellants' behalf. In these circumstances it was not an abuse of discretion to ensure a safe and orderly proceeding by having present at the trial law enforcement officers.

Appellants contend that it was improper to exempt from the sequestration order two prospective prosecution witnesses, the county sheriff and the police officer who investigated the case. OCGA § 24-9-61 (Code Ann. § 38-1703) gives either party the right to have witnesses sequestered, but it is subject to the discretion of the trial judge who may make exceptions. *Davis v. State,* 242 Ga. 901 (3) (252 SE2d 443) (1979). We fail to see how these exceptions were an abuse of the court's discretion. The sheriff never testified, and the investigator was shown to be needed to assist the district attorney in the trial of the case, an exception we have previously approved. See *McNeal v. State,* 228 Ga. 633 (4) (187 SE2d 271) (1972).

Appellants also argue, without a formal enumeration, that it was error to deny a change of venue, in light of highly inflammatory and prejudicial media coverage of the upcoming trial. As we explained in *Kesler v. State,* 249 Ga. 462 (7) (291 SE2d 497) (1982), widespread and adverse publicity per se does not necessarily warrant a change of venue. The record contains no evidence that publicity prior to and contemporaneous with the trial had a prejudicial impact upon the appellants' case. The record contains only one newspaper article and one editorial, neither of which can conceivably be called inflammatory. The record also shows that, applying the voir dire test of *Krist v. Caldwell,* 230 Ga. 536 (2) (198 SE2d 161) (1973), the jurors summoned to try this case had not formed fixed opinions as to the guilt or innocence of the accused from reading or hearing of the case. It was not error to deny the motion for change of venue.

8. In enumeration ten appellants contend that it was error to deny them access to the complete pre-trial statements of certain

prosecution witnesses. The trial court examined the statements in response to appellants' motion to produce and denied it, ruling that they contained no exculpatory material. Appellants contend that they are entitled to review the statements, regardless of the court's conclusion as to the materiality of their contents, upon service of a notice to produce pursuant to OCGA § 24-10-26 (Code Ann. § 38-801).

As we said in *Stevens v. State,* 242 Ga. 34 (1) (247 SE2d 838) (1978), witness statements have never been subject to a notice to produce, although exculpatory witness statements are subject to disclosure where requested under Brady v. Maryland, 373 U. S. 83 (83 SC 1194, 10 LE2d 215) (1963). In compliance with Brady and its progeny, the trial court here made an in-camera inspection of the requested statements and found no exculpatory information. In such a case, appellants then have the burden of showing both the materiality and the favorable nature of the evidence sought. Instead, appellants here merely speculate that the statements possibly contain exculpatory information, and thus fail to carry this burden. Although the proponents of the statements were subject to cross-examination during the trial, appellants cite no inconsistencies between the proffered testimony and the statements requested, nor do they assert prejudice from the absence of these statements prior to trial. Appellants have failed to show cause and we need not call for the sealed statements to examine them. See *Wilson v. State,* 246 Ga. 62 (1) (268 SE2d 895) (1980). We find no error under either Brady or OCGA § 24-10-26 (Code Ann. § 38-801).

9. In enumeration eleven appellants contend that the cumulative prejudicial impact of the errors specified in enumerations three, four, six, seven, eight and nine are such as to require the vacating of the judgment of conviction and the granting of a new trial. We have already considered these enumerations and found them to be without merit. They require no further consideration.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 29, 1983.

*Lawson, Washington & Thornton, Charles S. Thornton,* for appellants.

*Howard T. Oliver, Solicitor,* for appellee.